Maureen H. Lennon
Mitchell A. Young
MACo Defense Services
2717 Skyway Drive, Suite F
Helena, MT 59602-1213
Phone (406) 441-5471
Fax (406) 441-5497
mlennon@mtcounties.org
myoung@mtcounties.org

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SHERRY BRINGEDAHL, Personal Representative of the Estate of David Alan Sorensen,<br><br>　　　　　Plaintiff,<br><br>　vs.<br>SHERIDAN COUNTY, MONTANA, A Political Subdivision, and OFFICER SCOTT NELSON, Individually and in his Official Capacity,<br><br>　　　　　Defendants. | Case No.: CV-16-27-GF-BMM<br><br>DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT |

Defendants Sheridan County and Deputy Scott Nelson (Defendants), pursuant to L.R. 16.2(b)(1), respectfully submit herein the Preliminary Pretrial Statement as follows:

A.  **Factual Outline of the Case**

David Sorensen was arrested in the early morning hours of October 9, 2013 by Sheridan County Deputy Sheriff Scott Nelson after Sorensen instigated an altercation at the residence of Jarel Ward and subsequently resisted and interfered with efforts by Deputy Nelson to investigate the matter. Sorensen's actions are detailed by Deputy Nelson in his testimony at the Coroner's Inquest and in his Case Report and captured in large part on the patrol vehicle's dash cam video.

Following the arrest, Deputy Nelson transported Sorensen to the Sheridan County Detention Facility, a 72-hour hold facility in Plentywood, Montana. Upon arrival at the detention facility, Sorensen continued to be difficult. Deputy Nelson booked Sorensen into the facility. This process is described in detail by Deputy Nelson in his testimony at the Coroner's Inquest and in his Case Report, and captured by the booking room video. The booking process included a three-part suicide screening evaluation. It was also witnessed by several U.S. Border Patrol Agents. Sorensen was assessed as being a low suicide risk and showed no outward signs of being suicidal.

Sorensen told Deputy Nelson that he would calm down if he could take two Valium, a medication prescribed to Sorensen by his treating physician. Deputy Nelson eventually agreed to give Sorensen the medication after confirming it had

been prescribed to him.  Thereafter, Sorensen became more calm.  He asked to call his girlfriend, which Deputy Sorensen permitted him to do.

During the telephone conversation with his girlfriend, Sorensen indicated he could finish the four years of his prison sentence – a consequence he apparently expected after the events of that morning.  His girlfriend told him she would wait for him.

Sorensen was placed in one of the main cells.  He asked Deputy Nelson to bring him some crackers when he returned.  Deputy Nelson then left the cell to finish paperwork, take photographs of the damage to his patrol vehicle, and brief the oncoming dispatcher.  During his absence, Sorensen asked to see Deputy Nelson.  The Dispatcher told him to be patient and she would relay the message to Deputy Nelson.  When the deputy returned to the cell with Sorensen's crackers and a beverage, he found Sorensen unresponsive with a ligature around his neck.  Deputy Nelson immediately began efforts to save Sorensen's life and instructed dispatch to call emergency services to the scene.  Sorensen never regained consciousness.

Additional details concerning the arrest and incarceration, as well as Sorensen's history, may be obtained from testimony at the Coroner's Inquest, Deputy Nelson's Case Report, video from the patrol vehicle dash cam, the booking area and the area outside Sorensen's cell, and the DCI Investigation file.

Sheridan County and Deputy Nelson followed all applicable law enforcement standards and procedures, and adhered to all legal duties, in connection with the arrest and incarceration of Sorensen. No acts or omissions on the part of these Defendants caused Sorensen's death or the damages alleged in the Complaint.

**B.     Issues Concerning Jurisdiction and Venue**

Defendants are unaware of any issues concerning jurisdiction or venue.

**C-D.  The Factual Basis for, and the Legal Theory Underlying, Each Defense**

1. <u>Plaintiff's Complaint fails to state a claim against Defendants upon which relief may be granted.</u>

This defense applies to the "official capacity" claim against Deputy Nelson. Such claims are no longer viable under state and federal law.

2. <u>Defendants conformed to all applicable duty or duties, thus barring Plaintiff's claims.</u>

Defendants did not commit an act or fail to act in a manner which constituted breach of a duty owed to Sorensen or Plaintiff and therefore Defendants are not liable as alleged in the Complaint.

3. <u>No act or omission of Defendants subjected or caused David Sorensen to be deprived of federal rights, privileges, or immunities.</u>

This affirmative defense is self-evident.

///

4. <u>The injuries allegedly sustained or suffered by David Sorensen were proximately caused or contributed to by his own negligence or that of third parties unrelated to Defendants, and such negligence exceeds any negligence of Defendants. In the event David Sorensen's negligence and/or the negligence of third parties unrelated to Defendants is compared with that of Defendants, if any, any such damages for injuries should be reduced in proportion to the negligence of David Sorensen or third parties unrelated to Defendants.</u>

David Sorensen's intentional or negligent act of committing suicide and his effort to conceal the fact that he intended to do so were the cause of the alleged damages in this case.

5. <u>No acts or omissions of Defendants were the cause in fact or the legal cause of any damage or injury alleged in Plaintiff's Complaint.</u>

This defense is self-evident.

6. <u>David Sorensen's intentional actions and/or the actions of Plaintiff or third parties unrelated to Defendants were the superseding and intervening cause of any damages allegedly sustained or suffered by David Sorensen and/or Plaintiff, if any.</u>

Sorensen's unforeseeable act of suicide was a superseding intervening cause of the alleged damages in this case.

7. <u>Plaintiff's claims are offset or barred by the failure of David Sorensen to take reasonable care to minimize or to otherwise mitigate the damages alleged in this case.</u>

This affirmative defense was raised to avoid waiver. If discovery reveals this defense is unsupported by the evidence, it will not be pursued.

8. <u>Damages under state law, if any, are limited as set forth in Montana Code Annotated §§ 2-9-105, 2-9-108, 2-9-305, 2-9-314, and 2-9-317.</u>

The above-cited statutes bar or limit Plaintiff's recovery of damages, if any, under Montana law.

9. <u>To the extent that David Sorensen suffered from or had any pre-existing conditions, any damages or injury attributable to such pre-existing conditions are not the responsibility of Defendants.</u>

This affirmative defense was raised to avoid waiver. If discovery reveals this defense is unsupported by the evidence, it will not be pursued.

10. <u>Plaintiff's claims are barred by the applicable statute of limitations.</u>

Plaintiff's claims are barred by Montana Code Annotated Section 27-2-209(3), which requires that claims against a county that have been rejected by the county commissioners be commenced within six months after the first rejection. Plaintiff did not file her claim within six months of rejection by the Sheridan County Commissioners. Since Section 1983 claims are governed by state law statutes of limitations, both state and federal claims are time-barred.

11. <u>Some or all claims are barred by the public duty doctrine.</u>

This affirmative defense was raised to avoid waiver. If discovery reveals this defense is unsupported by the evidence, it will not be pursued.

12. <u>Defendant Nelson did not act in a manner that constituted deliberate indifference to federal constitutional rights and there is no basis for liability against him. 42 U.S.C. §1983.</u>

The Eighth Amendment protects inmates from cruel and unusual punishment, which includes the denial of medical care. *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976). To prevail on a claim under the Eighth Amendment for inadequate prison medical care, a prisoner must demonstrate deliberate indifference to serious medical needs. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), (citing *Estelle, supra*, at 104). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wonton infliction of pain, and (2) that the defendant's response was deliberately indifferent. To act with deliberate indifference, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." The state of mind of the defendant is to be viewed from a subjective, rather than objective viewpoint. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot, under our cases, be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994).

"Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person knows of and disregards an excessive risk to inmate health and safety." In order to know of the excessive risk, "it is not enough the person merely was aware of facts

from which the inference could be drawn that a substantial risk of serious harm existed; he was also required to draw that inference." If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk. *Gibson, supra,* 290 F.3d at 1187 (citations omitted) (emphasis added).

Deputy Nelson did not know and had no reason to believe Sorensen was in need of medical care, as alleged, or that he would commit suicide. He was not deliberately indifferent. Moreover, Deputy Nelson did not act with deliberate indifference toward Sorensen under any constitutional theory.

13. <u>Defendant Nelson is entitled to immunity or qualified immunity.</u>

Qualified immunity is appropriate unless the evidence shows that (1) the officers violated Sorensen's constitutional rights; and (2) the rights violated were clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The application of qualified immunity must be analyzed by examining the case from the "on scene perspective" of a reasonable police officer. *Id.* at 205; *Johnson v. County of L.A.*, 340 F.3d 787, 792 (9th Cir. 2003). Deputy Nelson did not violate Sorensen's constitutional rights. His actions were reasonable and constitutional from the moment he encountered Sorensen at his residence through the time of his death.

14. <u>Sheridan County did not maintain a custom, policy, or practice which resulted in the deprivation of David Sorensen's constitutional rights and, therefore, is not liable under 42 U.S.C. §1983.</u>

The County's customs, policies, and procedures were constitutionally sufficient and the County did not act with deliberate indifference toward Sorensen or Plaintiff. A plaintiff seeking to impose § 1983 liability on local governments must prove that their injury was caused by "action pursuant to official municipal policy," which includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Because Sorensen and Plaintiff were not damaged by the execution of a County policy or custom, or a failure to adopt policies which amounted to deliberate indifference, the County is not liable under 42 U.S.C. § 1983.

Moreover, a county may not be held vicariously liable for the alleged unconstitutional acts of its employees under the theory of respondeat superior. *Monell,* 436 U.S. at 691. It is when the execution of a government's policy or custom inflicts the injuries that the government, as an entity, is responsible under § 1983. *Monell,* 436 U.S. at 694.

15. <u>Defendant Nelson is not subject to an "official capacity" claim.</u>

It is a longstanding rule that plaintiffs no longer need to bring official capacity claims against local government officials. *Kentucky v. Graham* (1985), 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 3106, n. 14, 87 L.Ed.2d 114 (1983);

*Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); *Germann v. Stephens,* 2006 MT 130, ¶ 38, 322 Mont 303, 137 P.3d 545.

    16    <u>Defendants are immune from punitive damages claims under 42 U.S.C. §1983, Montana Code Annotated Section 2-9-105, the Montana Constitution and the United States Constitution.</u>

Defendants are immune from punitive damages for state law claims under Montana law.

**E.    Computation of Damages**

Defendants are not claiming damages.

**F.    Pendency or Disposition of Any Related State or Federal Litigation**

None of which Defendants are aware.

**G.    Additional Proposed Stipulations of Fact**

None.

**H.    Proposed Deadlines Related to Joinder and Amendment**

Defendants propose August 31, 2016 as the date for joining parties and amending pleadings.

**I.    Controlling Issues of Law Suitable for Pretrial Disposition**

1.    Whether Plaintiff's claim is barred by Montana Code Annotated Section 27-2-209(3), which requires that claims against a county that have been rejected by the county commissioners be commenced within six months after the first rejection.

2. Whether the official capacity claim against Deputy Nelson must be dismissed.

3. Whether summary judgment or partial summary judgment is appropriate for one or both Defendants.

**J.  Persons Believed to Have Information**

1. Poppler, Anthony
   Agent
   Department of Justice
   Division of Criminal Investigation
   2225 11th Avenue
   Helena, MT  59601
   (406) 444-3641

Agent Poppler investigated Sorensen's suicide and has information concerning his the facts and circumstances surrounding the arrest, incarceration, and suicide.

2. Howell, Mike
   Agent
   Department of Justice
   Division of Criminal Investigation
   119 1st Avenue North, Ste. 200
   Great Falls, MT  59403
   (406) 761-2706

Agent Howell assisted in the investigation into Sorensen's suicide and has information concerning the facts and circumstances surrounding the arrest, incarceration, and suicide.

3. Ulrickson, Gretchen
   Dispatcher
   Sheridan County Sheriff's Office
   100 West Laurel Avenue
   Plentywood, MT  59254
   (406) 765-1200

Dispatcher Ulrickson was on duty at the time of Sorensen's arrest, incarceration, and suicide. She dispatched Deputy Nelson to the scene after the 911 call and was present in the detention center during the booking of Sorensen and at the time of his suicide.

    4.    Ulrickson, Pat (deceased)
           Former Sheridan County Sheriff
           Via sworn testimony in Coroner's Inquest

Due to his death, former Sheriff Ulrickson's testimony is limited to that given at the Coroner's Inquest which, by this reference, is incorporated herein.

    5.    Anderson, Jonathan
           Former Undersheriff
           Sheridan County Sheriff's Office
           100 West Laurel Avenue
           Plentywood, MT 59254
           (406) 765-1200

Deputy Anderson arrived at the scene shortly after the discovery of Sorensen in his cell. He is believed to have information concerning events that occurred following his arrival as well as policies, procedures and training of deputies and staff of the Sheridan County Sheriff's Office. Deputy Anderson may have knowledge concerning Sorensen's past behaviors during interactions with law enforcement

    6.    Nelson, Scott
           Chief Deputy
           Sheridan County Sheriff's Office
           100 West Laurel Avenue
           Plentywood, MT 59254
           (406) 765-1200

Deputy Nelson has first-hand knowledge of the events of October 9, 2013 from the time he was dispatched to the home of Jarel Ward through the aftermath of Sorensen's suicide. His knowledge is detailed in his testimony at the Coroner's Inquest and his case report, and corroborated by video taken on the morning of October 9, 2013. He also has knowledge of his training, experience, and the policies and procedures of the Sheridan County Sheriff's Office. Deputy Nelson

also has knowledge concerning Sorensen's past behavior during interactions with law enforcement.

   7.   Fulkerson, Dave
        Coroner
        Sheridan County
        100 West Laurel Avenue
        Plentywood, MT  59254
        (406) 765-1010

Coroner Fulkerson has information revealed at the Coroner's Inquest.

   8.   Smith, Jonathan
        Agent
        United States Border Patrol
        31 Highway 16 North
        Plentywood, MT  59254
        (406) 765-1852

   9.   Anderberg, Nicholas
        Agent
        United States Border Patrol
        31 Highway 16 North
        Plentywood, MT  59254
        (406) 765-1852

   10.  Tompt, Darin
        Agent
        United States Border Patrol
        31 Highway 16 North
        Plentywood, MT  59254
        (406) 765-1852

   11.  Berry, Brad
        Agent
        United States Border Patrol
        31 Highway 16 North
        Plentywood, MT  59254
        (406) 765-1852

These agents witnessed some or all of the events from the time of Deputy Nelson's first interactions with Sorensen's arrest on October 9, 2013 through his booking into the Sheridan County Detention Center.

12. Physician Assistant Adam Graham
    Sheridan Memorial Hospital
    Plentywood, MT  59254

PA Graham was one of Sorensen's medical providers and has information concerning his medical history, including but not limited to his drug seeking behavior and drug abuse. He is also qualified to give opinions concerning the fact that two Valium would have had no adverse impact on Sorensen on October 9, 2013.

13. Brivdahl, Sue
    Probation Officer 2
    Montana Department of Corrections
    107 2nd Street Southwest
    Shelby, MT  59270
    (406) 433-5061

P.O. Brivdahl is believed to have information concerning Sorensen's criminal, medical, and drug use history.

14. Bennett, Thomas M.D.
    Doctor/Medical Examiner
    Forensic Medicine and Pathology, PLLC
    4549 Palisades Park Drive
    Billings, MT  59106
    (406) 670-8099
    (406) 855-5447

Dr. Bennett is the medical examiner who performed the post-mortem examination on Sorensen. His knowledge is summarized in his report following the examination. Dr. Bennett may also have information concerning toxicology and the likely effect of the substances in Sorensen's system in the hours before and at the time of death.

///

15. Grenz, Susan M.D.
    Doctor/Medical Director
    Sheridan Memorial Clinic
    440 West Laurel Avenue
    Plentywood, MT 59254
    (406) 765-3718

Dr. Grenz was one of Sorensen's medical providers and is believed to have information concerning his medical history, including but not limited to his drug seeking behavior and drug abuse. She may also be qualified to give opinions concerning the fact that two Valium would have had no adverse impact on Sorensen on October 9, 2013.

16. Cuchine, Christine
    EMS Director
    Sheridan Memorial Hospital
    440 West Laurel Avenue
    Plentywood, MT 59254
    (406) 765-3717

Ms. Cuchine's information is believed to be summarized in the interview conducted by Agent Poppler.

17. Holloway, Joelette
    322 South Jackson Street
    Plentywood, MT 59254
    (406) 765-1347
    (918) 607-8409

Ms. Holloway was Sorensen's girlfriend. Her information is believed to be summarized in the interview conducted by Agent Poppler.

18. Bringedahl, Sherry
    Box 21
    Gladmar, SK SOC1A0
    (306) 969-4403
    (406) 765-8447

Known to Plaintiff.

19. Bringedahl, Bryce
    Box 21
    Gladmar, SK S0C1A0
    306-969-4403
    (406) 765-8150

Known to Plaintiff.

20. Ward, Jarel
    214 South Chestnut Street
    Plentywood, MT 59254
    (406) 895-7050

21. Alred, Siena
    214 South Chestnut Street
    Plentywood, MT 59254
    (406) 895-7050

Mr. Ward and his girlfriend, Ms. Alred, are believed to have information concerning Sorensen's behavior in the early morning hours of October 9, 2013 and the events that preceded and precipitated the 911 call by Ms. Alred. They may also have information concerning Sorensen's criminal, medical, and drug use history.

### K. Substance of Risk Sharing Agreement

Sheridan County has entered into a risk sharing agreement with the Montana Association of Counties/Property & Casualty Trust which provides coverage for this claim. The policy limits under state law are $750,000 per claim and $1,500,000 per occurrence. There is no coverage for punitive damages.

### L. Prospect for Compromise

No settlement discussions have occurred. Defendants have not foreclosed the possibility of settlement.

**M.    Suitability of Special Procedures**

Defendants do not believe any special procedures are required in this case.

DATED this 16th day of June, 2016.

                                                        MACo Defense Services

                                                         /s/ Maureen H. Lennon
                                                        Maureen H. Lennon

## CERTIFICATE OF SERVICE

I certify that on this 16th day of June, 2016, a true and correct copy of the foregoing *Defendants' Preliminary Pretrial Statement* was deposited in the U. S. Mail, postage prepaid, addressed to the following:

    David L. Irving
    Attorney at Law
    PO Drawer B
    110 5th Street South, Suite 110
    Glasgow, MT 59230

                                                         /s/ Maureen H. Lennon
                                                        Maureen H. Lennon